UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.    00-6173-Cr-ZLOCH |
| | ) | Magistrate Judge Seltzer |
| v. | ) | |
| CARLOS GIRALDO HURTADO | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO**
**THE STANDING DISCOVERY ORDER**

The United States hereby files this response to the Standing Discovery Order. This response also complies with Local Rule 88.10 and Federal Rule of Criminal Procedure 16, and is numbered to correspond with Local Rule 88.10.

- A. 1. There are no written statements made by the defendant.

  2. The government is unaware of any oral statements made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent that the government intends to use at trial, except as indicated in reports or other documents attached to this response and incorporated herein by reference, and as indicated in documents available for inspection by contacting Special Agent Bob Shinn at (954) 489-1893.

  3. No defendant testified before the Grand Jury.

  4. The NCIC record of the defendant, if any exists, will be made available upon receipt by this office.



      5.    Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained or belonging to the defendant may be inspected at a mutually convenient time at the Office of the Drug Enforcement Administration, 1475 West Cypress Creek Road, Suite 301, Ft. Lauderdale, Florida 33301. Please call Special Agent Bob Shinn at (954) 489-1893 to set up a date and time that is convenient to both parties. The attachments to this discovery response are not necessarily copies of all the books, papers, documents, etc., that the government may intend to introduce at trial.

      6.    A laboratory analysis of the substance seized in connection with this case will be made available to you upon receipt by this office.

B.    DEMAND FOR RECIPROCAL DISCOVERY: The United States requests the disclosure and production of materials enumerated as items 1, 2 and 3 of Section B of the Standing Discovery Order. This request is also made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

C.    The government will disclose any information or material which may be favorable on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

D.    The government will disclose any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), or <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

E.    The government will disclose any prior convictions of any alleged co-conspirator, accomplice or informant who will testify for the government at trial.

F.    No defendant was identified in a lineup, show up, photo spread or similar identification proceedings.

G.    The government has advised its agents and officers involved in this case to preserve all rough notes.

2

H.  The government will timely advise the defendant of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine).

I.  The defendant is not an aggrieved person, as defined in Title 18, United States Code, Section 2510(11), of any electronic surveillance.

J.  The government has ordered transcribed the Grand Jury testimony of all witnesses who will testify for the government at the trial of this cause.

K.  The government will, upon defense request, deliver to any laboratory presently registered with the Attorney General in compliance with 21 U.S.C. § 822 and § 823 and 21 C.F.R. 1301.13, a sufficient representative sample of any alleged contraband which is the subject of this indictment to allow independent chemical analysis of such sample.

If there is no response within ten (10) days from the date of the Certificate of Service attached hereto, the bulk of the contraband/narcotics will be destroyed. As usual, random samples will be set aside to be used as evidence at trial.

L.  The government does not know of any automobile, vessel, or aircraft allegedly used in the commission of this offense that is in the government's possession.

M.  The government is not aware of any latent fingerprints or palm prints which have been identified by a government expert as those of the defendant.

N.  N/A at this time; to be furnished when forensic analysis of controlled substance is complete.

O.  N/A

3

P.        N/A

The government is aware of its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, Brady, Giglio, Napue, and the obligation to assure a fair trial.

In addition to the request made above by the government pursuant to both Section B of the Standing Discovery Order and Rule 16(b) of the Federal Rules of Criminal Procedure, in accordance with Rule 12.1 of the Federal Rules of Criminal Procedure, the government hereby demands Notice of Alibi defense; the approximate time, date, and place of the offense was:

>Time: Throughout the day and evening hours as to Ct.1 and as to Ct.2 (until the time of arrest)
>Date: Approximately June 13-15, 2000, as to Ct.1; June 15 as to Ct.2
>Place: Broward County, Florida, and, as to Ct.1, also New York City, New York and points between the two locations

The attachments to this response are numbered pages 1 - 12. Please contact the undersigned Assistant United States Attorney if any pages are missing.

>Respectfully submitted,
>
>GUY A. LEWIS
>UNITED STATES ATTORNEY
>
>By: _____
>DEBRA J. STUART
>Assistant United States Attorney
>Court No. 5500061
>500 E. Broward Blvd. Suite 700
>Ft. Lauderdale, Fl 33394
>Tel: (954) 356-7255, ext. 3597
>Fax: (954) 356-7336

cc: Special Agent Shinn
    Drug Enforcement Administration

4

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail July 7, 2000 to: Marty Bidwill, Assistant Federal Public Defender, 101 N.E. 3rd Avenue, Ft. Lauderdale, Fl 33301.

_____
DEBRA J. STUART
Assistant United States Attorney

## REPORT OF INVESTIGATION

Page 1 of 6

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: S/A Robert P. Shinn<br>At Fort Lauderdale D.O.<br>Group 1 | | | 6. File Title | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared<br>06/28/00 | |

9. Other Officers: See Witness Section

10. Report Re: Case Summary

### DEFENDANTS

NAME:        Carlos Giraldo HURTADO
D/POB:       03/25/61
ADDRESS:     3204 81st Jacksson Heights, NY
OCCUPATION:  Unemployed

### JUDICIAL DISTRICT
Southern District of Florida

### VIOLATIONS
Title 21 USC 841 (A)(1)
Title 21 USC 846

### DATE/TIME/PLACE
On June 15, 2000, at approximately 6:50 p.m., at the Fort Lauderdale/Hollywood International Airport.

### DRUG EXHIBITS

Exhibit 1: (124) pellets of suspected heroin wrapped in white latex medical tape, weighing approximately 1050 grams.

Exhibit 2: (2) small square shaped items white in color wrapped in clear plastic concealed in a black hand held radio.

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division | S/A Robert P. Shinn | 6/29/00 |
| District | 14. Approved (Name and Title)<br>Bruce E. Baldwin<br>Group Supervisor | 15. Date<br>6/29/00 |
| Other | | |

DEA Form -6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

001



| | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title | |
| 4. Page 2 of 6 | | |
| 5. Program Code | 6. Date Prepared 06/28/00 | |

On June 15, 2000, Broward County DIU Detectives Robert Wolfkill and Jose Interian conducted a consensual encounter of Carlos Giraldo HURTADO at the Fort Lauderdale/Hollywood International Airport. HURTADO had Exhibit 1 concealed underneath his clothing, and Exhibit 2 concealed inside a hand held radio. On the same date Detectives Wolfkill and Interian relinquished Exhibits 1 and 2 to S/A Shinn and Det. Sgt. Weiner, who transported the exhibits to the FLDO temporary storage vault. On June 16, 2000, Exhibit 1 and 2 were processed by S/A's Mancuso and Mihok and transported to the Southeast Lab for analysis.

## NON-DRUG EXHIBITS

Exhibit N-1: Spirit Airline tickets and ticket jacket.
Exhibit N-2: Colombian Passport
Exhibit N-3: DOJ Statement of Rights form.
Exhibit N-4: Address book

Exhibit N-1 through N-4 were seized by DIU Detectives Robert Wolfkill and Jose Interian from Carlos Giraldo HURTADO at the Fort Lauderdale/Hollywood International Airport on June 15, 2000. Detectives Wolfkill and Interian relinquished the exhibits to S/A Shinn, who maintained custody of the exhibits until they were processed and relinquished to the FLDO Non-Drug Evidence Custodian.

## ACTION ON DEFENDANTS

On June 15, 2000, Carlos Giraldo HURTADO was arrested by S/A Robert Shinn and members of the Broward County Sheriffs Interdiction Group at the Fort Lauderdale/Hollywood International Airport for possession with intent to distribute heroin. On June 19, 2000 HURTADO appeared before the Honorable Magistrate Judge Luranna Snow, Southern District of Florida for his Initial Appearance. On June 22, 2000, S/A Shinn appeared before the Federal Grand Jury, Southern District of Florida. After hearing testimony from S/A Shinn, the Grand Jury indicted MENDOZA for Possession and Conspiracy to possess with intent to distribute heroin. On June 23, 2000, HURTADO appeared before Judge Luranna Snow once again for a pre trial detention hearing. Judge Snow ordered HURTADO to post a $100,000.00

---

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | |
| | 3. File Title | |
| 4. Page 3 of 6 | | |
| 5. Program Code | 6. Date Prepared 06/28/00 | |

corporate surety bond with a Nebia stipulation and the right for a Pre Trial Detention hearing if bond was posted.

**WITNESSES**
Robert Wolfkill
Jose Interian
Broward County Domestic Interdiction Unit
Detectives, Fort Lauderdale, Florida.

**DETAILS**

1. On June 15, 2000, members of the Broward County Domestic Interdiction Unit (DIU) were working in the terminal area of the Fort Lauderdale/Hollywood International Airport. At approximately 6:50 P.M., Detectives Robert Wolfkill and Jose Interian observed a subject, later identified as Carlos Giraldo HURTADO, arriving in a Yellow taxi cab. This type of cab is known by DIU detectives to be utilized by a large portion of narcotics traffickers from the Miami, Florida area. As HURTADO exited the cab, DIU detectives observed HURTADO scanning people and vehicles at the "departures" area of the terminal. It appeared to DIU detectives that HURTADO was conducting a surveillance. HURTADO walked into the airport and stood in line at the Spirit Airlines ticket counter.

2. Detective Wolfkill observed HURTADO and noted the following factors consistent with the actions and characteristics of narco-couriers arrested at the Ft. Lauderdale airport within the last year. HURTADO was wearing what appeared to be a "Santeria" beaded necklace. Detective Wolfkill knew from his experience that narco-traffickers of Latin American descent often purchase such beads for protection during transport of controlled substances. In addition HURTADO was wearing a large shirt which was not tucked into his jeans. This is common among body carriers of controlled substances who are trying to conceal bulky packaging of controlled substances. HURTADO was also standing in line for an "outbound" flight to La Guardia (New York City) which is a flight and destination city often used by Colombian Narcotics Organizations.

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

003

| **REPORT OF INVESTIGATION** (Continuation) | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |
| 4. Page 4 of 6 | | |
| 5. Program Code | 6. Date Prepared 06/28/00 | |

3. HURTADO located Det. Wolfkill standing by the airline counter and began to stare at Det. Wolfkill for an unusual period of time, as if to analyze Detective Wolfkill's status and actions. At that time, Detective Wolfkill moved so as to display his law enforcement badge and picture id, which was on a lanyard about his neck. HURTADO then became extremely nervous and began fidgeting from his right foot to his left foot, while continually looking at the counter at Detective Wolfkill and then to his rear, which was the street entrance of the departure portion of the terminal. The other parties in the line appeared completely unconcerned with Det. Wolfkill's presence.

4. HURTADO produced a passport at the Spirit Airlines ticket counter, at which time Det. Wolfkill noted that HURTADO's hands were shaking. Wolfkill identified himself as a police officer by displaying his badge and photo identification and asked if he could speak with HURTADO, which he replied "Yes." Wolfkill asked how long HURTADO was going to be in New York, and HURTADO replied "Three days." Wolfkill asked if he had family in New York, and HURTADO said "Yes." Det. Wolfkill asked how he purchased his ticket, and HURTADO appeared confused. After HURTADO received his ticket, Det. Wolfkill asked if he could speak with him further, and HURTADO said "Yes." Det. Jose Interian, who speaks Spanish, then approached and identified himself as a police officer by displaying his badge and photo identification.

5. Det. Interian introduced himself in Spanish and asked where HURTADO was flying. HURTADO answered, "New York." Detective Interian asked where he was staying, and HURTADO replied, "with family in Miami." Det. Interian explained his duties as an interdiction officer and asked permission to search HURTADO's person and carry-on bag, which HURTADO agreed. Det. Interian conducted a pat-down of HURTADO and felt numerous small pellets around HURTADO's waistline, apparently on the interior of HURTADO's jeans. HURTADO became even more nervous and stated twice, "I've got something." HURTADO was then escorted back to the DIU office and consented to removal of his jeans.

6. Detective Wolfkill then observed a ring of pellets wrapped in white nylon tape around HURTADO's waist, and an additional strand of pellets wrapped in white nylon "medical" tape in HURTADO's underwear, as well

DEA Form - 6a
(Jul. 1996)
DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.                    004

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |
| 4. Page 5 of 6 | | |
| 5. Program Code | 6. Date Prepared 06/28/00 | |

as two additional stands of pellets wrapped in the same manner, inside HURTADO's boots. A total of 124 pellets (described as Exhibit 1) weighing approximately one kilogram was seized from HURTADO's person. HURTADO also had a two-way radio clipped on his belt; the interior of the radio contained two small squares of white powder wrapped in clear plastic (described as Exhibit 2), and weighing approximately 90 grams. Det. Wolfkill field tested one of the suspect pellets, which resulted in a positive indication for heroin.

7. Det. Interian advised HURTADO of his Constitutional Rights in the Spanish language as per Miranda and received acknowledgment from HURTADO that he (HURTADO) understood his rights. HURTADO then admitted that he was acting as a courier for the transportation of heroin from South Florida to New York City, for further distribution. HURTADO further stated that he flew from New York to Miami, Florida after receiving a telephone call from a Colombian male known to him as "Tokayo" LNU. Tokayo was provided HURTADO's cellular telephone number (646-732-0119), by "Caliche" LNU in Cali, Colombia.

8. According to HURTADO, Tokayo internally smuggled the heroin pellets inside his body from Cali, Colombia to Miami, Florida. After passing the pellets, Tokayo telephoned HURTADO, who met him at a unknown location in west Broward County on June 15, 2000 and gave him the pellets. HURTADO packaged the pellets (Exhibit 1) in white medical type tape and took a taxi to the Fort Lauderdale/Hollywood International Airport.

9. HURTADO further stated that upon arrival to New York he was to meet another Colombian in Jackson Heights, New York. HURTADO was to receive $15,000.00 partial payment for Exhibit 1 and 2. Approximately eight days later, HURTADO was to receive the balance of $50,000.00. HURTADO was to be paid $5,000.00 for his transportation fee and sends the remaining $60,000.00 via Western Union to Caliche in Cali, Colombia, utilizing fictitious names.

10. HURTADO was asked and agreed to travel to New York and deliver the heroin to his customers. On June 16, 2000, with the concurrence of the United States Attorney's Office in the Southern District of

---

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

005



| | |
|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. <br> 2. G-DEP Identifier <br> 3. File Title |
| 4. Page 6 of 6 <br> 5. Program Code | 6. Date Prepared <br> 06/28/00 |

Florida, S/A Shinn, and Detectives Wolfkill and Interian escorted HURTADO to New York. Upon arrival, HURTADO declined to proceed with the controlled delivery for fear of retaliation. The operation was then aborted, and HURTADO was returned to Fort Lauderdale, Florida and incarcerated at the Fort Lauderdale City Jail, until remanded into the custody of the U.S. Marshals Service.

## INDEXING

1. HURTADO, Carlos Giraldo
aka: Carlos E. Giraldo, W/M, DOB: 03/25/61, 6'3", 220 lbs., Brn hair and eyes, Residential Address: 3204 81st Jackson Heights, New York, Cellular telephone: (646) 732-0119.




DEA Form - 6a <br>
(Jul. 1996) <br>
DEA SENSITIVE <br>
Drug Enforcement Administration <br>
1 - Prosecutor <br>
This report is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the agency to which loaned. <br>
Previous edition dated 8/94 may be used. <br>
006

# United States District Court

**SOUTHERN** DISTRICT OF **FLORIDA**

JUN 1 9 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

**CRIMINAL COMPLAINT**

CARLOS GIRALDO HURTADO

CASE NUMBER: 00-4144-Vitunac

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 15, 2000__ in __Broward__ County, in the __Southern__ District of __Florida__ defendant did, (Track Statutory Language of Offense) knowingly and intentionally possess with intent to distribute, heroin, a Schedule I controlled substance, and did knowingly and intentionally conspire, confederate and agree with others to possess such heroin with intent to distribute.

in violation of Title __21__ United States Code, Sections __841(a)(1) and 846.__

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following facts:

Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:  [x] Yes  [ ] No

Signature of Complainant
Special Agent Robert Shinn

Sworn to before me, and subscribed in my presence,

June 17, 2000                          at  Palm Beach County, Florida
Date                                        City and State

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT

Before me, the undersigned personally appeared Robert Shinn, who, being duly sworn, deposes and states:

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) in Fort Lauderdale, Florida. I have been a Special Agent for approximately three and one half years and am currently assigned to investigate violations of federal narcotics laws. Prior to my employment with the DEA, I was a Police Officer in St. Louis County Missouri for 8 years. During my last two years in St. Louis County I was assigned to a narcotics unit where I conducted narcotics investigations.

2. During my career as a DEA Agent and as a police officer, I have participated in numerous investigations involving violations of narcotics laws, including several of heroin cases. As a result of my experience, I am familiar with the manner and methods used by narcotics traffickers to distribute narcotics.

3. This affidavit is submitted as part of a complaint for CARLOS GIRALDO HURTADO to show probable cause for the federal violations of possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to possess heroin with intent to distribute, in violation of Title 21, United States Code, Section 846.

5. On June 15, 2000, members of the Broward County Domestic Drug Interdiction Unit (DIU) were working in the terminal area of the Fort Lauderdale/Hollywood International Airport. At approximately 6:50 P.M., Detectives Robert Wolfkill and Jose Interian observed a subject, later identified as CARLOS GIRALDO HURTADO, arriving in a Yellow taxi cab. This type of cab is

1

known by DIU detectives to be utilized by a large portion of narcotics traffickers from the Miami, Florida area.¹ As HURTADO exited the cab, DIU detectives observed HURTADO scanning people and vehicles at the "departures" area of the terminal. It appeared to DIU detectives that HURTADO was conducting a surveillance. HURTADO walked into the airport and stood in line at the Spirit Airlines ticket counter.

6. Detective Wolfkill observed HURTADO and noted the following factors consistent with the actions and characteristics of narco-couriers arrested at the Ft. Lauderdale airport within the last year. HURTADO was wearing what appeared to be a "Santeria" beaded necklace. Detective Wolfkill knew from his experience that narco-traffickers of Latin American descent often purchase such beads for protection during transport of controlled substances. In addition HURTADO was wearing a large shirt which was not tucked into his jeans. This is common among body carriers of controlled substances who are trying to conceal bulky packaging of controlled substances. HURTADO was also standing on line for an "outbound" flight to La Guardia (New York City) which is a flight and destination city often used by Colombian Narcotics Organizations. HURTADO located Det. Wolfkill standing by the airline counter and began to stare at Det. Wolfkill for an unusual period of time, as if to analyze Detective Wolfkill's status and actions. At that time, Detective Wolfkill moved so as to display his law enforcement badge and picture id, which was on a lanyard about his neck. HURTADO then became extremely nervous and began fidgeting from his right foot to his left foot, while continually looking at the counter at Detective Wolfkill and then to his rear, which was the street entrance of the departure portion of the terminal. The other parties in the line appeared completely unconcerned with Det Wolfkill's presence.

7. At the ticket counter HURTADO produced a passport, and Det Wolfkill noted that

2

HURTADO's hands were shaking. Wolfkill identified himself as a police officer and asked if he could speak with him. HURTADO replied "Yes." Wolfkill asked how long HURTADO was going to be in New York, and HURTADO replied "Three days." Wolfkill asked if he had family in New York, and HURTADO said "Yes." Det. Wolfkill asked how he purchased his ticket, and HURTADO appeared confused. After HURTADO received his ticket, Det. Wolfkill asked if he could speak with him further, and HURTADO said "Yes." Det. Jose Interian, who speaks Spanish, then approached and identified himself as a police officer by displaying his badge and photo id.

8. Det Interian introduced himself in Spanish and asked where HURTADO was flying. HURTADO answered, "New York." Detective Interian asked where he was staying, and HURTADO replied, "with family in Miami."

9. Det. Interian explained his duties and asked permission to search HURTADO's person and carry-on bag; HURTADO agreed. Detective Interian conducted a pat-down of HURTADO and felt numerous small pellets in a circle around HURTADO's waistline, apparently on the interior of HURTADO's jeans. HURTADO became even more nervous and stated twice, "I've got something." HURTADO was then escorted back to the DIU office and consented to removal of his jeans. Detective Wolfkill then observed a ring of pellets wrapped in white nylon tape around HURTADO's waist, and an additional strand of pellets wrapped in white nylon "medical" tape in HURTADO's underwear, as well as two additional stands of pellets wrapped the same way, inside HURTADO's boots. HURTADO also had a two-way radio clipped on his belt; the interior of the radio contained two small squares of white powder wrapped in clear plastic. Det. Wolfkill field tested one of the suspect pellets, which resulted in a positive indication for heroin, a Schedule I controlled substance.

10. Det. Interian advised HURTADO of his constitutional rights in the Spanish language as

3

010

per Miranda and received acknowledgment from HURTADO that he (HURTADO) understood his rights. HURTADO then admitted that he was acting as a courier for the transportation of heroin from South Florida to New York City, for further distribution. HURTADO admitted that he was being paid to act as a courier; he admitted he had met another courier who had brought the heroin from Colombia, and he (H URTADO) was going to deliver the heroin to another person in New York.

FURTHER YOUR AFFIANT SAITH NOT.

ROBERT SHINN, Special Agent
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to
before me this 17th day of June, 2000.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE



· FBI No.

born Sierra Leone?

Green Card - A No.   it Navy
U.S. citizen Sept 26 1996

Giraldo

012